UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                               **MEMORANDUM OF LAW & ORDER**
                                Criminal File No. 05-282 (MJD/JJG)

(1) CHRISTOPHER WILLIAM SMITH
a/k/a "Chris Jonson," a/k/a "Tony Spitalie,"
a/k/a "Bruce Jonson," a/k/a "Robert Jonson,"

       Defendant.
_____

## I.    INTRODUCTION

This matter is before the Court on Defendant Christopher William Smith's Motion for a New Trial.  [Docket No. 357]

## II.    BACKGROUND

Smith was originally indicted on August 23, 2005.  The Third Superseding Indictment was filed on September 19, 2006, against four defendants, Christopher Smith, Bruce Lieberman, Daniel Adkins, and Darrell Griepp.  Smith was charged with Count One, conspiracy to distribute and dispense controlled substances; Counts Two through Four, unlawful distribution and dispensing of controlled substances;  Counts Five through Seven, introduction of misbranded drugs into interstate commerce; Count Eight, conspiracy to commit money laundering; and

1

Count Nine, continuing criminal enterprise.  Trial commenced on October 10, 2006.  On November 22, 2006, the jury found Smith guilty on all counts.  Smith now brings a motion for a new trial.

### III.   DISCUSSION

#### A.   Standard

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court may vacate any judgment and grant a new trial if the interest of justice so requires.  The decision of whether to grant a new trial is within the broad discretion of the district court.  United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004).  The Court must "balance the alleged errors against the record as a whole and evaluate the fairness of the trial."  United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988).

#### B.   Testimony of Dr. Mach

Smith asserts that the Court erred by allowing Dr. Philip Mach to testify to the prevailing standards of medical practice in the United States because he was not qualified as an expert.  Because Smith did not raise this objection to Dr. Mach's testimony at the time it was introduced, the Court reviews the propriety of his testimony under the plain error standard.  United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988).  "The plain error rule connotes error that has affected a defendant's substantial rights, resulting in a miscarriage of justice."  Id.

Dr. Mach testified to how he usually practices medicine and to how the internet prescribing that he did for Smith was not done in the usual course of medical practice and not for a legitimate medical purpose.

Under Federal Rule of Evidence 701, a lay witness can testify regarding his opinions or inference if those opinions or inferences are

> (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

As a lay witness, Dr. Mach could not testify to whether another physician's actions met a particular standard of care; however, Dr. Mach was permitted to testify as to standard of care regarding his own issuance of prescriptions "based on his experience . . . [and to aid the jury's] understanding of his decision making process in the situation." Parker v. Cent. Kan. Med. Ctr., No. 02-3099, 57 Fed. Appx. 401, 404 (10th Cir. Feb. 24, 2003) (unpublished) (quoting Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996)).  See also United States v. Hayes, 595 F.2d 258, 261 (5th Cir. 1979) ("The doctor himself testified that during the period in question he had no legitimate patients and that any prescriptions written by him were not written in the usual course of medical practice or for a legitimate medical purpose.").  Additionally, Dr. Mach's limited testimony regarding whether he issued the internet prescriptions not for a legitimate medical purpose and not in the usual course of professional practice was not the

only testimony regarding the prevailing standards of medical practice. The Government also provided the expert testimony of Carmen Catizone.

>    C.   **Expert Testimony Regarding Prevailing Standards of Medical Practice**

Carmen Catizone, M.S., R.Ph., D.Ph., testified that he had reviewed the information upon which Dr. Mach relied when issuing prescriptions and that, based on his experience and expertise, there was not enough information for a physician to determine whether a person needed the prescription requested. He opined that the information did not meet the requirement for the standard of care for a prescription to be dispensed or prescribed.

Smith argues Dr. Catizone was unqualified to give testimony concerning the prevailing standards of medical practice in the United States for a prescription to be valid. Smith raised this objection during trial and was overruled.

Dr. Catizone is a pharmacist and the chief executive officer and executive director for the National Association of the Boards of Pharmacy. He is an expert in internet pharmacies and has testified before Congress on that subject. A pharmacist can be qualified to testify regarding the medical standard for prescribing a drug. See United States v. Jones, 570 F.2d 765, 769 (8th Cir. 1978) (holding that Government adequately proved medical standard for prescription of particular drug through testimony of non-M.D. when witness taught at medical school and had Ph.D. in pharmacology).

Furthermore, pharmacists are required by law to determine if prescriptions are issued in the usual course of professional practice and for a legitimate medical purpose.  21 C.F.R. § 1306.04(a) (providing that "a corresponding responsibility rests with the pharmacist who fills the prescription" and that "the person knowingly filling . . . a purported prescription [issued not in the usual course of professional treatment] . . . shall be subject to the penalties provided for violations of the provision of law relating to controlled substances" ).  The Court concludes that Dr. Catizone was qualified to opine regarding the prevailing standard of medical care for prescribing the drugs at issue in this case.

Additionally, it is "well established" that expert testimony is not required to prove that a doctor's prescription writing is outside the usual course of professional practice.  United States v. Word, 806 F.2d 658, 662-63 (6th Cir. 1986) (citing United States v. Rogers, 609 F.2d 834, 839 (5th Cir. 1980); United States v. Smurthwaite, 590 F.2d 889, 892 (10th Cir. 1979); United States v. Larson, 507 F.2d 385, 387 (9th Cir. 1974); United States v. Bartee, 479 F.2d 484, 448 (10th Cir. 1973)).  Even without Dr. Catizone's expert testimony, there was ample evidence for a jury to find that Dr. Mach's prescription practice fell outside the usual course of professional practice.

**D.     Defense of Good Faith Reading of 21 C.F.R. § 1306.04**

Smith asserts that the Court erred by refusing to instruct the jury that a

good-faith reading of 21 C.F.R. § 1306.04 could support an acquittal.

"A district court has broad discretion when formulating jury instructions, and a defendant is entitled to a requested instruction only if it correctly states the law and is supported by the evidence."  United States v. Poe, 442 F.3d 1101, 1103 (8th Cir. 2006) (citation omitted).  The Court did not err in refusing to give Smith's proposed instruction because the proposed instruction was a misstatement of the law.

The proposed instruction was based on the Supreme Court decision in Cheek v. United States, 498 U.S. 192 (1991).  In Cheek, the Supreme Court held that a good faith misunderstanding of the law could negate the willfulness requirement of the crimes of willful tax evasion, 26 U.S.C. § 7201, and of willful failure to file a tax return, 26 U.S.C. § 7203.  Id. at 202-03.

The Eighth Circuit has not extended Cheek beyond the tax context.  The Eighth Circuit explained, "Although ignorance of the law traditionally is no defense, Congress has carved out an exception to that rule in certain criminal tax statutes by making 'specific intent to violate the law' one of the elements."  United States v. Hildebrandt, 961 F.2d 116, 118 (8th Cir. 1992) (citing Cheek, 498 U.S. at 199-200).  It explicitly held that "[t]he Cheek holding was premised on the complexity of the tax laws . . . If Cheek is to be expanded, that expansion must be made by the Supreme Court."  Id. at 119.  See also United States v. Derezinski,

945 F.2d 1006, 1012 (8th Cir. 1991) (noting that the holding in <u>Cheek</u> was premised on the fact that "'willfulness' is an express element in a criminal tax statute" and holding that <u>Cheek</u> did not apply to a prosecution for conspiracy to defraud the Internal Revenue Service because the government prosecuted the defendant "under a general conspiracy statute, not a criminal tax statute, and because 'willfulness' is not an express element of [the conspiracy statute]").  The crimes for which Smith was convicted do not contain a willfulness requirement; nor are they tax crimes.  The <u>Cheek</u> holding is not applicable.

Furthermore, the Court did accurately instruct the jury that they could acquit Smith if they agreed that he acted in the good faith belief that the prescriptions were valid, even if that belief was unreasonable.

### E.     Definition of Usual Course of Practice

Smith argues that the Court erred by refusing to instruct the jury that the seminal question of fact was whether the prescriptions at issue were issued in the usual course of Dr. Mach's medical practice rather than in the usual course of the prevailing standards of medical practice in the United States.

Based on extensive case law, the Court concludes that the law requires an objective standard for the phrase "usual course of professional practice."  <u>See</u> <u>United States v. Moore</u>, 423 U.S. 122, 124 (1975) ("[R]egistered physicians can be prosecuted under § 841 when their activities fall outside the usual course of

professional practice."); United States v. Katz, 445 F.3d 1023, 1030 (8th Cir. 2006) (noting that "the material issue [was] whether Dr. Katz wrote . . . prescriptions outside the usual course of medical practice and without a legitimate medical purpose").  See also United States v. Hurwitz, 459 F.3d 463, 479 (4th Cir. 2006) ("We believe that the inquiry must be an objective one, a conclusion that has been reached by every court to specifically consider the question."); United States v. Feingold, 454 F.3d 1001, 1011-12 (9th Cir. 2006) ("[I]t is appropriate in cases such as this for the jury to consider the practitioner's behavior against the benchmark of acceptable and accepted medical practice.  Just how that benchmark is expressed to the jury-here, the district court defined that benchmark in terms of the 'standard of medical practice generally recognized and accepted in the country'-is a matter within the district court's discretion.") (footnote and citation omitted); United States v. Vamos, 797 F.2d 1146, 1151 (2d Cir. 1986) ("The term 'professional practice' refers to generally accepted medical practice; a practitioner is not free deliberately to disregard prevailing standards of treatment.  In short, the doctor must act in the good faith belief that his distribution of the controlled substance is for a legitimate medical purpose and in accordance with the usual course of generally accepted medical practice.") (citing United States v. Norris, 780 F.2d 1207, 1209 (5th Cir. 1986)).

According, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Defendant Christopher William Smith's Motion for a New Trial [Docket No. 357] is **DENIED**.

Dated: December 14, 2006                    s / Michael J. Davis
                                            Judge Michael J. Davis
                                            United States District Court